**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

UNITED STATES OF AMERICA

v.

PARIS CHAPPE'LL HUDSON,

Defendant.

Case No. 4:26-cr-8-2

**OPINION & ORDER**

Defendant Paris Chappe'll Hudson moved for judgment of acquittal on a charge of maintaining a drug-involved premises, arguing primarily that while she maintained the house where she lived with her fiancé and co-defendant, Khymarr Talib Cooper, the government failed to prove that she did so specifically for the purpose of enabling Cooper's drug dealing enterprise. ECF No. 64. But the government put on ample evidence that the defendant knew about the drug operation taking place in her home. And a reasonable jury could also conclude the defendant benefited directly from that operation.

Fundamentally, it is reasonable to infer that a person who maintains a premises does so for the purpose for which they know the premises is used—especially if they benefit from the use of the premises for that purpose. Therefore, taking the evidence in the light most favorable to the government, the Court finds that a rational jury could have convicted the defendant. Therefore, the motion will be **DENIED**.

## I.    BACKGROUND

The defendant was charged in Count IV of a five-count indictment with maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1) & (b) and 18 U.S.C. § 2. ECF No. 1 at 3. Specifically, the indictment alleged that the defendant "knowingly use[d] and maintain[ed] a place located on Brewer Creek Place in Manassas, Virginia . . . for the purpose of manufacturing, distributing, and using a controlled substance." *Id.* The case was tried before a jury on April 7–8, 2026. ECF Nos. 57–58.

Following the close of the government's case in chief, the defendant moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29. ECF No. 86 at 193:14–203:9. The Court denied the motion, ruling that the government had presented sufficient evidence, when viewed in the light most favorable to the government, to enable a rational juror to find the defendant guilty of the charged offense beyond a reasonable doubt. *Id.* at 203:11–208:22.

The defendant renewed her motion at the close of trial. ECF No. 87 at 25:19–25. At the defendant's request, the Court reserved ruling pursuant to Rule 29(b). *Id.* at 26:5–10. After a short period of deliberation, the jury returned a guilty verdict against the defendant on Count IV. ECF No. 87 at 81:11–83:20; ECF No. 60.

The Court permitted the defendant to file supplemental briefing on her Rule 29 motion. ECF No. 87 at 85:1–6; *see* ECF No. 64. The government responded. ECF No. 65. The defendant did not file a reply.

## II.     LEGAL STANDARD

### A.     Motions for Judgment of Acquittal

"[A]fter the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "The court may reserve decision on the motion, . . . submit the case to the jury, and decide the motion . . . after [the jury] returns a verdict of guilty . . . ." Fed. R. Crim. P. 29(b). "If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved." *Id.*

"[I]n determining whether to grant a judgment of acquittal, the court views 'the evidence and inferences therefrom' in the light most favorable to the government." *United States v. Rafiekian*, 68 F.4th 177, 186 (4th Cir. 2023) (quoting *Tibbs v. Florida*, 457 U.S. 31, 41 (1982)). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted).

"The jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." *United States v. Murphy*, 35 F.3d 143, 148 (4th Cir. 1994). Therefore, the Court must consider "'circumstantial as well as direct evidence, [] allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established, and [] assume that the jury resolved all contradictions in testimony in favor of the [g]overnment.'" *United States*

3

*v. Hicks*, 64 F.4th 546, 550 (4th Cir. 2023) (quotation marks and citation omitted); *see also United States v. Dennis*, 19 F.4th 656, 665 (4th Cir. 2021) ("A conviction may rest entirely on circumstantial evidence.").

## III.   ANALYSIS

To convict a person of maintaining a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1), "the [g]overnment [must] prove beyond a reasonable doubt that [the defendant] (1) knowingly (2) opened, leased, rented, used, or[1] maintained any place, permanently or temporarily, (3) for the purpose of manufacturing, distributing, or using any controlled substance." *Hicks*, 64 F.4th at 551; *see* 21 U.S.C. § 856(a)(1). Here, the defendant concedes that the government met its burden on the first two elements. ECF No. 64 at 3. The motion primarily contends that a rational jury could not reasonably infer that the defendant maintained the Brewer Creek Place house specifically for the purpose of drug distribution. ECF No. 64 at 4. It also challenges the sufficiency of the government's evidence on an alternative, aiding-and-abetting theory of liability. *Id.* at 5–6. The Court will address each theory in turn.

### A.   Principal Liability

Based on the evidence obtained through a search of the house, along with proof that the defendant lived there and was subjectively aware of Cooper's drug operation, a reasonable jury could infer that the defendant maintained the premises for the

---

[1] Because the statute lists "manufacturing," "distributing," and "using" disjunctively, proof beyond a reasonable doubt on any one of those theories is sufficient to convict, even though the indictment is worded conjunctively. *United States v. Champion*, 387 F.2d 561, 563 n.6 (4th Cir. 1967).

specific purpose of enabling Cooper's drug dealing operation. The government elicited testimony that: (1) the defendant and Cooper had lived in the Brewer Creek Place house since September 2023, ECF No. 86 at 121:2–10; *see also id.* at 146:1–9 (defendant was listed on the lease as the sole occupant); Gov. Ex. 1 (lease); (2) a search of the residence revealed 161 street-pressed oxycodone pills, marijuana, packaging material, a commercial-grade money counter, digital scales, and three firearms, ECF No. 86 at 132:2–10; *see* Gov. Exs. 19, 65; (3) drugs, paraphernalia, firearms, and ammunition magazines were located throughout the residence, including in the basement, the master bedroom, and a second upstairs bedroom, *e.g.,* ECF No. 86 at 134:2–7, 135:15–19, 140:9–18, 141:3–8, 148:18–21, 149:4–6; *see also id.* at 152:15–18 (the defendant used the second bedroom as an "office" and "closet"); and (4) substantial amounts of cash in various denominations were found throughout the residence, including on a couch, under a mattress, in a safe, and inside drawers, *id.* at 143:2–144:9, 187:18–20; *see* Gov. Exs. 59–60, 71, 206; *see also* ECF No. 86 at 143:7–10 (explaining why "[c]ash is indicative of narcotics trafficking").

The reasonable inferences the Court relies on to decide this motion largely follow the course the Fifth Circuit charted out in *United States v. Onick*, 889 F.2d 1425 (5th Cir. 1989):

> Beginning with the premise that [the defendant] lived in the house, the jury first could infer that [the defendant] came across and therefore knew about the drugs and drug paraphernalia scattered throughout the house. Second, the jury could infer that [the defendant] maintained the house because [s]he lived there. Third, based on the large quantity of drug paraphernalia used to measure and package drugs (particularly the [packaging material,

5

> commercial-grade money counter, and digital scales, ECF No. 86 at 132:3–6]), the jury could infer that [the defendant] intended to use the property to distribute drugs. Therefore, a reasonable jury could convict [the defendant] for knowingly maintaining a place to manufacture, distribute, or use drugs.

*Id.* at 1431 (emphasis omitted).

But here, the government's evidence is stronger, for two reasons. First, there was direct evidence—in the form of text messages—that the defendant knew about Cooper's drug dealing. *See* Gov. Ex. 210 at 3 (defendant referring to Cooper "selling drugs"); Gov. Ex. 114 at 1 (defendant asking Cooper if he had drugs[2] and stating that certain people would like to buy); Gov. Ex. 101 at 2 (defendant texting Cooper "you can still work and [deal drugs][3]").

Moreover, a reasonable jury could conclude that the defendant benefitted directly from Cooper's drug distribution operation, in that it enabled her to live an expensive lifestyle that their legitimate work alone could not accommodate.[4]

First, there was direct evidence that the defendant had unpaid bills and wanted more money. Gov. Exs. 104, 111 at 1–2. The government also elicited testimony that the defendant made approximately $28,600 in wages in 2025, and that

---

[2] The defendant used the word "tree," but there was direct evidence that 'tree' means "marijuana" in this context. Gov. Ex. 114; ECF No. 86 at 182:5–8.

[3] There was direct evidence that the defendant used the word "trap" in this message to mean "deal drugs." Gov. Ex. 101; ECF No. 86 at 158:21–24.

[4] This reasoning requires a two-step inference: (1) the defendant benefitted, and (2) the defendant maintained the premises for the purpose of enabling that benefit. That does not render the second conclusion unreasonable. But even if it did, that would not change the outcome here, because the other inferences—all of which are based upon the evidence directly—would be sufficient to sustain a conviction.

Cooper made less than $5,000 in wages during quarter four of 2024 and quarter one of 2025 combined. ECF No. 86 at 146:17–147:19; Gov. Exs. 96–97 (income statements), 105 (defendant acknowledging her reported income). Although the defendant and Cooper had some minor sources of supplemental income, including through small investments in the stock market and rental income from a townhome Cooper owned, the government put on evidence that the defendant and Cooper together made less than $50,000 per year. ECF No. 86 at 147:24–148:7.

However, their residence was a three-story townhome, containing three bedrooms, two living rooms, a dining room, a kitchen, a sunroom, and a basement. ECF No. 86 at 148:14–150:10, 152:6–17; *see* Gov. Exs. 23, 26, 31–32, 43, 76, 82–83, 89. Additionally, there was testimony that the defendant's residence contained designer clothing and shoes, jewelry, and other items the jury could reasonably infer were expensive. *See, e.g.*, ECF No. 86 at 151:1–18; Gov. Exs. 52, 54, 57, 58, 69; *see also* Gov. Ex. 109 (defendant and Cooper planning overseas travel).

Taken together, this evidence[5] supports a reasonable inference that enabling Cooper's drug distribution operation was "one of the [] specific purposes" for which the defendant maintained the Brewer Creek Place house. *Hicks*, 64 F.4th at 551.

---

[5] The government's evidence would be sufficient without the inference that the defendant benefited from Cooper's drug dealing. *See Onick*, 889 F.2d at 1431.

### B.    Aiding and Abetting

Additionally, a reasonable jury could conclude that the defendant aided and abetted Cooper's use of a drug-involved premises.[6]

The defendant contends that the government's evidence in support of an aiding and abetting theory "was insufficient to sustain a conviction because Cooper did not maintain the premises." ECF No. 64 at 5–6. That argument overlooks the fact that the government could succeed by proving that Cooper *used* the Brewer Creek Place house to distribute drugs and the defendant aided and abetted that *use*. *See* ECF No. 1 at 3 (charging the defendant with "knowingly using and maintaining the premises").

A jury could reasonably infer that Cooper used the Brewer Creek Place premises for drug distribution because he lived in the house, ample drugs and paraphernalia were found there, and the defendant made repeated references, in text messages, to Cooper dealing drugs. ECF No. 86 at 120:25–121:10; *id.* at 132:2–10; Gov. Ex. 210 at 3; Gov. Ex. 114 at 1.

The jury could likewise infer that the defendant aided and abetted Cooper's use of the premises for that purpose. "A defendant is guilty of aiding and abetting if [they have] knowingly associated [themselves] with and participated in the criminal

---

[6] The government points out that the defendant's arguments regarding the aiding and abetting theory are "new" at the briefing stage, having been absent from oral argument at the close of trial. ECF No. 65 at 2 n.1. But the government does not ask the Court to find that those arguments are waived or forfeited. Regardless, because the Court can decide the motion without reference to the aiding and abetting theory, and it finds the defendant's contentions on that theory unpersuasive anyway, it need not engage with the question of waiver or forfeiture.

venture." *United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (citation and quotation marks omitted). "[T]o prove association, the [g]overnment must establish that the defendant participated in the principal's criminal intent, which requires that a defendant be cognizant of the principal's criminal intent and the lawlessness of his activity." *Id.* (citation omitted). Aiding and abetting does not require "participation in every stage of an illegal venture." *Id.* (cleaned up). "[P]articipation at some stage accompanied by knowledge of the result and intent to bring about that result" is sufficient. *Id.* (quotation marks and citations omitted).

Based on direct evidence that the defendant knew about Cooper's drug dealing, a reasonable jury could infer that the defendant "kn[ew] of the result" of renewing the lease for the Brewer Creek Place house—namely, the continued distribution of drugs from that premises. *Burgos*, 94 F.3d at 873; *see* ECF No. 86 at 146:10–13. And because the defendant "is presumed to intend the natural and probable consequences" of her intentional acts, that evidence is also sufficient to prove that the defendant "inten[ded] to bring about" the continuation of the drug distribution operation. *Duke v. United States*, 90 F.2d 840, 841 (4th Cir. 1937); *Burgos*, 94 F.3d at 873.

### C.    Inferences in the Rule 29 Analysis

The defendant repeatedly contends that the government's evidence is insufficient because the conclusions required to convict her depend on "speculation." ECF No. 64 at 4–6. That is wrong because it is based on a misunderstanding of the Court's duty on a Rule 29 motion to make inferences in favor of conviction.

Speculation—a concept that arises chiefly from the law of evidence—generally refers to testimony not based on personal knowledge. *See* Fed. R. Evid. 602; *United States v. Gill*, 153 F.3d 723, at *2 (4th Cir. 1998) (unpublished) (citing Rule 602 for the proposition that a witness's testimony would be "speculative" because they "lacked knowledge"). *Evidence* must not include speculation in this sense, because drawing inferences from the facts is the province of the jury, not the witnesses.

But for that exact reason, the Rule 29 analysis *requires* the Court to draw conclusions that extend beyond what the evidence directly stated. *See Murphy*, 35 F.3d at 148; *Tibbs* 457 U.S. at 41. In the Rule 29 context, this concept is called 'inference.' *See Inference*, BLACK'S LAW DICTIONARY (12th ed. 2024) "[a] conclusion reached by considering other facts and deducing a logical consequence from them").

The defendant appears to believe that an inference becomes unreasonable (or, as she frames it, 'speculative'[7]) when it produces a conclusion that is not *required* by the underlying facts. *See* ECF No. 64 at 4 (contending it is "speculative" to conclude "Cooper's drug dealing was the key to financial relief and a higher standard of living" for the defendant, because one could imagine other sources of money—family assistance, savings, gifts, etc.—that could have helped the defendant pay the rent or

---

[7] The defendant relies on *United States v. Crounsset*, 403 F. Supp. 2d 475, 479 (E.D. Va. 2005), which cites the Eighth Circuit's statement that "[a] reasonable inference is one which may be drawn from the evidence without resort to speculation." *Kincade v. U.S. Elec. Motors, Inc.*, 219 F.3d 800, 802 (8th Cir. 2000). Some circuits, including the Eighth, use the term 'speculation' to capture the notion of making inferences based on more, nested inferences. That is not what the Court has done here. With the exception of one conclusion—which is not essential to the outcome of the motion, *see supra* n.4—each of the inferences the Court outlines is based *directly* upon facts proved at trial.

10

could have accounted for the presence of expensive items in the house.). That is incorrect. Instead, an inference is unreasonable when it is not "*a logical consequence*" of the evidence. *Inference*, BLACK'S LAW DICTIONARY (emphasis added).

The defendant's arguments about 'speculation' fail because the reasonableness of an inference is not defeated by the possibility that alternative, innocent conclusions could also be drawn from the same facts. In other words, "a judgment of acquittal is [only] appropriate when the evidence is so deficient that acquittal is 'the *only* proper verdict.'" *Rafiekian*, 68 F.4th at 186 (*quoting Tibbs*, 457 U.S. at 42 (emphasis in *Rafiekian*)).

Because a reasonable jury could conclude the defendant maintained the Brewer Creek Place premises for the specific purpose of enabling Cooper's drug distribution operation—or that she aided and abetted Cooper in using the premises for that purpose—the Rule 29 motion fails.

## IV.   CONCLUSION

Defendant Paris Chappe'll Hudson's motion for judgment of acquittal (ECF No. 64) is **DENIED**.

**IT IS SO ORDERED.**

_____ /s/

Jamar K. Walker
United States District Judge

Newport News, Virginia
July 10, 2026

11